IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Health Net of Arizona, Inc., | No. CV 13-1433-TUC-DCB (CRP) |
| Plaintiff, | **REPORT & RECOMMENDATION** |
| vs. | |
| Sylvia Mathews Burwell, Secretary of Health and Human Services, | |
| Defendant. | |

Health Net[1] ("HN"), filed this action to challenge the April 20, 2012 and June 21, 2012 decisions ("Decisions") of the Medicare Appeals Council ("MAC"), which held that HN was responsible for paying the costs of certain state court-ordered mental health evaluations ("COEs") provided by University Physicians Health Care ("UPH") to Medicare beneficiaries enrolled in HN's Medicare Advantage Program. Pending before the Court is HN's Motion for Summary Judgment (Doc. 41), to which UPH has filed a Response (Doc. 43) and HN has filed a Reply (Doc. 45). This matter came on for oral argument on June 24, 2014.

For the following reasons, the Magistrate Judge recommends that the District Court, after

---

[1] HN is a Medicare Advantage Organization offering a Medicare Advantage Plan ("MA Plan") providing coverage to its Medicare enrollees for items and services under Medicare Program Parts A and B. (Plaintiff's Statement of Facts ("PSOF"), ¶1). As a Medicare Advantage Organization, HN is obligated to provide MA Plan enrollees with coverage of all services available under Medicare. 42 C.F.R. §422.101(a). (Motion for Summary Judgment, p.2).

1  its independent review, deny HN's Motion for Summary Judgment ("MSJ").

**FACTUAL BACKGROUND**

The facts are largely undisputed. Between April 11, 2008 and May 4, 2011, UPH provided the COEs at issue. (PSOF ¶2; Defendant's Controverting Statement of Facts ("DCSOF"), ¶2). HN denied coverage for the COEs on the ground that under Medicare, HN is not required to pay for services paid for by another government entity. (PSOF, ¶3; DCSOF, 3). HN took the position that under Arizona statute, Pima County was the required payer for the COEs. (PSOF, ¶4; DCSOF, ¶4). UPH appealed HN's denials to MAXIMUS Federal Services, the Qualified Independent Contractor for Medicare Part C, for an independent review.[2] (PSOF, ¶5; DCSOF 5). The independent reviewer upheld all of HN's denials of service. (*Id.*).

From June 2010 through February 2012, HN and UPH participated in 13 individual and consolidated proceedings before nine Administrate Law Judges ("ALJ") involving 52 separate beneficiary claims. (PSOF, ¶6; DCSOF, ¶6). The ALJ decisions were inconsistent–some claims were resolved in favor of HN and other claims were resolved in favor of UPH.[3] (PSOF, ¶7; DCSOF, ¶7). Following each ALJ decision, the unsuccessful party initiated the review process with the MAC. (PSOF, ¶8; DCSOF, ¶8).

Because the appeals involved common questions of law and fact, the parties' requested and the MAC agreed to consolidate the appeals for a determination of the issues. (PSOF, ¶10; DCSOF; ¶10; AR 6449-6450). On November 10, 2011, Christopher Randolph, Director

---

[2]After an initial determination of non-coverage by an MA provider, (*e.g.* HN), a claimant is entitled to redetermination, 42 C.F.R. §405.940, *et seq.*; if the redetermination is unfavorable, the claimant may request reconsideration by a Qualified Independent Contractor, 42 C.F.R. §405.960, *et seq.*; the losing party to a reconsideration decision may then request a hearing before an ALJ, 42 C.F.R. § 405.1000, *et seq.*; thereafter, appeal can be sought before the MAC, 42 C.F.R. § 405.1100, *et. seq.*). (*See* Response, p. 3 n.1).

[3]The parties disagree as to the number of claims resolved in their favor. HN states that 10 claims were resolved in its favor and 42 were resolved in favor of UPH. (PSOF, ¶7). UPH asserts that 11 claims were resolved in HN's favor and 41 were resolved in favor of UPH. (DCSOF, ¶7).

of the Medicare Operations Division (which provides administrative and staff support to the MAC) issued an email setting out the process for the consolidated appeals which the parties had previously discussed with him in a September 2011 conference call ("the Agreement"). (*See* AR 6449-6450; Defendant's Statement of Facts ("DSOF"), ¶32; Plaintiff's Controverting Statement of Facts ("PCSOF"), ¶32)). In pertinent part, the Agreement specified the docket numbers of cases on appeal and stated:

> The parties, through counsel, wish all written argument to be considered as part of the Council's review in each case, to the extent relevant...and therefore wish their respective arguments to apply to all of the above-listed appeals even where not specifically designated by MAC docket number on the face of the memorandum. Arguments submitted by each party will be copied to each appeal without further request of the parties.

(AR 6449). Because more appeals were "coming through the 3rd level (ALJ level) of appeals...", the parties also "wished to extend their arguments to those cases." (*Id.*). The parties also wanted to submit additional briefs. Therefore,

> We agreed that HealthNet would submit any additional material and argument on or before September 23, 2011, and that UPH would submit any replies on or before September 30, 2011. Both HealthNet's and UPH's arguments will be included in the recently submitted appeals of ALJ Engleman's September 1, 2011 decisions."

(*Id.*).

On September 23, 2011, HN filed a brief designated as its "Final Brief", and UPH filed it's Final Brief on September 30, 2011. (DSOF, ¶36; PCSOF, ¶36).

A central issue in the ALJ proceedings was whether UPH was exempted from Medicare payment rules under 42 C.F.R. § 411.8(6)(b), which sets out four requirements.[4] The parties

---

[4] To qualify for the exemption, UPH was required to establish that it:
(i) Is not a Federal provider or other facility operated by a Federal agency;
(ii) Receives U.S. government funds under a Federal program that provides support to facilities that furnish health care services;
(iii) Customarily seeks payment for services not covered under Medicare from all available sources, including private insurance and patients' cash resources; and
(iv) Limits the amounts it collects or seeks to collect from a Medicare Part B beneficiary and others on the beneficiary's behalf to:
    (A) Any unmet deductible applied to the charges related to the

- 3 -

1 do not dispute that: "In every ALJ hearing at issue in this matter, without exception, Health 2 Net explicitly accepted UPH's assertion that it met the first two prongs of the test in 42 3 C.F.R. § 411.8(b)(6) ("the Test") or did not dispute UPH's claim that it met those two 4 prongs. Nearly all of the ALJs found that Health Net had explicitly conceded that UPH met 5 the first two prongs of the Test or appeared not to dispute prongs 1 and 2." (DSOF, ¶28; 6 PCSOF, ¶28; *see also* DCSOF, ¶29 (HN "never once challenged UPH's claim at the ALJ 7 level that UPH satisfied the first two prongs of the [T]est."); PCSOF, ¶29).

8 While the MAC prepared its consolidated decision, new COE cases continued to be heard 9 and decided by ALJs. (DSOF, ¶37; PCSOF, ¶37). When HN filed an appeal to the MAC of 10 adverse ALJ decisions from November 28, 2011, it also filed an 18-page brief with the MAC 11 on December 21, 2011. (DSOF, ¶38; PCSOF, ¶38). In the cover letter to the December 21, 12 2011 brief, HN requested that the "brief be filed with all MAC Docket[5] numbers pertaining 13 to *UPH v. Health Net* for MAC review." (AR 1171; *see also* AR 1170; DSOF, ¶¶37-39; 14 PCSOF, ¶¶37-39). The MAC requested HN submit additional copies of the December Brief, 15 and when HN complied on December 29, 2011, it reiterated in its new cover letter and in the 16 Brief itself that the new brief was to be cross-filed in all COE cases awaiting the MAC's 17 consolidated decision, again specifying the docket numbers referenced in the Agreement. 18 (AR 3733, 26737; DSOF, ¶¶40, 41; PCSOF, ¶¶40, 41). In its December Brief HN conceded 19 that UPH met the first two prongs of the Test. (DSOF, ¶¶38, 41; PCSOF, ¶¶ 38, 41).

20 Before the MAC had issued a decision in the then-pending cases, the ALJs decided 21 additional COE cases against HN on January 5, 2012. (DSOF, ¶42; PCSOF, ¶42). On

---

23 reasonable costs that the facility incurs in providing the covered services;
24 (B) Twenty percent of the remainder of those charges;
25 (C) The charges for noncovered services.

26 42 C.F.R. §411.8(b)(6).

27 [5]The docket numbers listed in the December cover letter correspond to the docket 28 numbers listed in the Agreement.

- 4 -

1 January 20, 2012, HN appealed these decisions to the MAC. (*Id.*).  The Secretary asserts, 2 and HN does not dispute, that HN's January 2012 request for review "contained Health Net's 3 full 18-page December brief in which Health Net..." conceded that UPH satisfied Prong 2 4 of the Test.  (DSOF, ¶42; PCSOF ¶42; *see also*, AR 34478).  Further,  HN did not request 5 that the January 2012 Brief be cross-filed.  HN does not dispute the Secretary's assertion that 6 HN did not request cross-filing because copies of the December Brief had already been 7 cross-filed in the previous pending cases.  (DSOF, ¶47; PCSOF, ¶47).

8 On April 4, 2012, HN filed appeals of eight February 29, 2012 ALJ decisions.  (PSOF, 9 ¶44; DCSOF, ¶44).  The parties do not dispute that "[w]ith each [April 2012] appeal, Health 10 Net filed what appeared to be yet another copy of the 18-page December Brief....These eight 11 briefs were identical to the 18-page, single-spaced briefs submitted on December 21, 12 December 29, and again on January 20, but with one small yet critical difference....[T]he 13 language previously conceding that UPH met Prong 2 of the Test had now been replaced 14 with a new heading and two sentences in which,  for the first time, HN alleged UPH did not 15 meet Prong 2."[6] (PSOF, ¶¶44-45; *see also* DCSOF, ¶¶44-45; AR 469 (HN's Brief dated April 16 4, 2012)).  HN did not request that the April brief be cross-filed.  (DSOF, ¶47; PCSOF ¶47). 17 The Secretary asserts, and HN does not dispute, that HN's failure to request that the April 18 Briefs be cross-filed "conveyed the impression that the briefs were simply another unchanged 19 repetition of the December Brief."  (DSOF, ¶47; *see also* PCSOF, ¶47 (agreeing with the 20 Secretary's statement of fact at DSOF ¶47)).

---

[6]The April Brief reads, in pertinent part:
**UPH Does Not Meet the Second Prong of 42 C.F.R. § 411.8(b)(6) And Therefore Does Not Fall Within the Exception.**
However, UPH does not meet the second prong of 42 C.F.R. § 411.8(b)(6) because there is no indication that UPH receives any U.S. government funds or grants under a Federal program that is providing support to the hospital, nor has any evidence been presented by UPH to corroborate that UPH receives such funds. Accordingly, UPH does not fall within the scope of the exceptions under 42 C.F.R. § 411.(b)(6) to permit payment in this case.
(AR 469) (footnote setting out regulation omitted) (bold print in original).

- 5 -

1   On April 20, 2012, the MAC issued its consolidated Decision on the COE cases finding
2   that HN was responsible for payment. (DSOF, ¶48; PCSOF, ¶48). In that decision, the
3   MAC wrote that: "The appellants [HN] do not dispute that UPH satisfies the first two
4   criteria..." (*i.e*., the first two prongs of the Test). (AR 677). On June 21, 2012, when the
5   MAC issued the second decision at issue here, the MAC incorporated its April 20, 2012
6   decision.[7] (AR 3708-3730).

7   On May 2, 2012, HN wrote UPH challenging UPH's assertion that it met Prong 2 of the
8   Test and requested that UPH provide information to support its position. (AR 487-488).

9   On June 14, 2012 and July 25, 2012, HN filed Requests to Reopen the MAC's April 20
10  and June 21, 2012 Decisions. (DSOF, ¶50; PCSOF. ¶50). The applicable regulation, in
11  pertinent part, permits reopening for good cause established when: (1) there is new and
12  material evidence that was not available at the time of the decision and that may result in a
13  different conclusion or the evidence; or (2) the evidence that was considered in making the
14  decision clearly shows on its face an obvious error was made at the time of the decision. 42
15  C.F.R. §405.986(a). In supporting its argument that UPH did not receive the requisite federal
16  funding, which HN contended was new evidence, HN submitted an affidavit citing to a
17  public website. However, the MAC found there was no indication that the website and
18  search function only became available after the MAC issued its decision. Thus, the MAC
19  concluded that "the evidence on which Health Net now relies was readily available to Health
20  Net at the time Health Net prepared its submissions in the consolidated cases." (AR 7).

21  The MAC, also concluded that a change in a party's legal position is also not a basis for
22  reopening. The MAC pointed out that HN's revised legal position was not that UPH
23  received no federal funds, but that the sources of federal funds UPH received did not qualify
24  as "Federal program[s] that provide[] support to facilities that furnish health care services"
25  within the meaning of the Test. (*Id.* at 8). The MAC held that: "[T]his dispute calls for a

---

[7] The June 2012 decision pertained to enrollee G. Williams. (AR 3708). When the MAC issued its April 20, 2012 decision, there were unresolved questions about the administrative record in the G. Williams' matter. (AR 3709).

- 6 -

1  legal interpretation, and not an evidentiary ruling.  Thus, even if the Council were to agree
2  with Health Net's assertion that the Consolidated Decision contains an 'obvious error'–which
3  we do not–the error would not be a basis for reopening under..." the regulation.  (*Id.*).

4  The MAC went on to point out that, with regard to HN's April Brief, that HN: did not
5  indicate it intended to repudiate its  position conceding Prong 2 expressed in the briefs in the
6  consolidated cases, and HN did not indicate it wanted the April Brief cross-filed as it did
7  with the December Brief.  (AR 9; AR 9 n.7).

8  Consequently, the MAC denied the request to reopen because HN did not satisfy the
9  requirements under the regulation to reopen.  (DSOF, ¶50; PCSOF, ¶50; *see also* AR 2-10).
10 Because the MAC determined that HN did not satisfy the requirements under the regulation
11 for reopening, the MAC did not reach the merits of HN's argument that UPH failed to satisfy
12 Prong 2.

13 The parties agreed at oral argument that this Court does not have jurisdiction to review the
14 MAC's denial of HN's request to reopen. *See also*  42 C.F.R. §405.926(l); *Palomar Med.*
15 *Ctr. v. Sebelius,* 693 F.3d 1151 (9th Cir. 2012) (the Secretary's discretionary decision not to
16 reopen is not subject to appeal or judicial review).

17 **STANDARD.**  A party to a decision made by the MAC may seek judicial review of any final
18 agency determination. *See* 42 C.F.R. § 405.1136.  On review, the district court shall enter a
19 judgment affirming, modifying, or reversing the agency's final decision, with or without
20 remanding the cause for a rehearing. 42 U.S.C. § 405(g).  The court considers the record in
21 its entirety, "weighing both evidence that supports and evidence that detracts from the
22 Secretary's conclusion." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999) (citation
23 omitted). "If the evidence is susceptible of more than one rational interpretation,..." the court
24 may not substitute its judgment for the agency's. *Bear Lake Watch, Inc. v. FEC,* 324 F.3d
25 1071, 1086 (9th Cir.2003); *Tackett*, 180 F.3d at 1098.  The Secretary's factual findings, "if
26 supported by substantial evidence, are conclusive." 42 C.F.R. § 405.1136(f)(1). Substantial
27 evidence is "'more than a mere scintilla[,] but not necessarily a preponderance.'"
28 *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Connett v. Barnhart*, 340

1  F.3d 871, 873 (9th Cir. 2003)); *see also Tackett*, 180 F.3d at 1098.  Further, substantial
2  evidence is "such relevant evidence as a reasonable mind might accept as adequate to support
3  a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  However, if the ALJ's
4  decision is not supported by substantial evidence or if based on legal error, the Secretary's
5  decision may be disturbed. *See Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986).

6  At oral argument, both parties agreed that if the Court were inclined to grant HN's Motion,
7  the matter should be remanded.

8  **DISCUSSION**

9  The request for judicial review in this action "focuses exclusively on the MAC's
10 conclusion that UPH satisfied the second prong of 42 C.F.R. §411.8(b)(6)[]" (*i.e.* the Test).
11 (MSJ, p. 5).  In reaching its decision against HN, the MAC found under the applicable
12 statutes and regulations that Medicare would not pay for the inpatient hospitalization services
13 arising from the provision of COEs unless UPH fell within the exception set forth at 42
14 C.F.R. § 411.8(b)(6).  (*See* AR 665-680).  To qualify for the exception, UPH was required
15 to establish that it met four criteria specified at section 411.8(b)(6)(i)-(iv).  Under the first
16 two criteria, UPH was required to establish that it: "(i) Is not a Federal provider or other
17 facility operated by a Federal agency; [and] *(ii) Receives U.S. government funds under a*
18 *Federal program that provides support to facilities that furnish health care services*...." 42
19 C.F.R. §411.8(b)(6)(i)-(ii) (emphasis added).  In reaching the conclusion that UPH satisfied
20 the Test, the MAC stated, in pertinent part, that HN did "not dispute that UPH satisfies the
21 first two criteria: that UPH is not a federal provider or other facility operated by a federal
22 agency, and that UPH receives federal funds under a federal program that provides support
23 to facilities that furnish health care services."  (AR 677).

24 Because the MAC's Decision did not specifically address HN's position in its April Brief
25 that UPH failed to satisfy Prong 2, HN seeks summary judgment arguing that: (1) the MAC
26 violated HN's "due process rights by ignoring an outcome-determinative procedural rule;"
27 (2) the MAC's decision was not based on substantial evidence; and (3) the MAC's decision
28

- 8 -

1  was arbitrary and capricious.[8]  (MSJ, p.1).  In addition to contesting the arguments raised by
2  HN, the Secretary also counters that HN waived any argument before the MAC that UPH
3  failed to meet Prong 2.  The Secretary's waiver argument is well taken.

4  The Secretary points out that HN "repeatedly conceded and never once challenged,
5  UPH's claim at the ALJ level that UPH satisfied the first two prongs of the Test", and by
6  doing so, HN removed the issue from contention before the ALJ.  (Response, p. 7).  Thus,
7  according to the Secretary, HN's position in the April Brief that no evidence had been
8  presented on Prong 2 "was specious in the extreme because the very reason there was no
9  evidence–beyond UPH's prior submissions and Health Net's concessions–was that Health
10 Net had never put the question at issue, and had always conceded that UPH met Prong 2.
11 Health Net's acceptance of UPH's position meant that there was never any reason or
12 requirement for UPH to further establish that it met Prong 2."  (Response, p. 10).   The
13 Secretary further points out that although HN raised the Prong 2 issue in the April Brief, HN
14 did not withdraw or repudiate its prior statements, including statements in other briefs
15 pending before the MAC, conceding that UPH satisfied Prong 2.  (*Id.*).

16 HN asserts that its "position is not that the MAC should have considered new evidence
17 but instead that by failing to consider an essential issue, the MAC deprived Health Net of
18 adequate review."  (Reply, p. 4).  HN goes on to argue that the MAC could have remanded
19 the matter for additional evidence on the issue. The problem for HN is that its concession on
20 Prong 2 at the ALJ level necessarily resulted in conceding both factual and legal issues, i.e.
21 conceding the *fact* that UPH received the requisite funding specified in Prong 2, in turn,
22 removed from contention the legal issue whether the type of funding UPH received actually
23 satisfied Prong 2.

24 It has been long-recognized that "'[t]he power of the court to act in the disposition of a
25 trial upon facts conceded by counsel is as plain as its power to act upon the evidence

---

[8]HN points out that regardless of the Court's decision as to the responsible payer, UPH will be reimbursed for the services provided; the issue is whether HN or Pima County is required to reimburse UPH.  (MSJ, p. 2 n.1).

- 9 -

1  produced.'" *Christian Legal Soc. Chapter of the Univ. of Calif. v. Martinez,* __ U.S. __, 130
2  S.Ct. 2971, 2983 (2010) (quoting *Oscanyan v. Arms Co.,* 103 U.S. 261, 263 (1881)); *see also*
3  *Trinidad y Garcia v. Thomas,* 683 F.3d. 952, 982 (9th Cir. 2012) (concessions "have the
4  effect of withdrawing a fact from issue and dispensing wholly with the need for further
5  proof."). This is especially so to prevent parties from "maintain[ing] a contention contrary
6  to the agreed statement,...or to suggest, on appeal that the facts were other than as stipulated
7  or that any material fact was omitted.'" *Christian Legal Soc.*, __ U.S. __, 130 S.Ct. at 2983
8  (quoting 83 C.J.S., Stipulations § 93 (2000)). On this record, HN is bound by its concession
9  at the ALJ level. *See Christian Legal Soc.,* __ U.S. __, 130 S.Ct. at 2983 (rejecting party's
10 "unseemly attempt to escape from the stipulation and shift its target....").

Moreover, "[i]t is a basic tenet of administrative law that each party to a formal adjudication must have a full and fair opportunity to litigate the issues to be decided by the agency. When one party utterly fails to raise a significant issue before the ALJ, the record developed with regard to that issue will usually be inadequate to support a substantive finding in its favor and, generally speaking, neither the ALJ nor the [reviewing] Board should consider such an issue." *Trident Seafoods, Inc., v. N.L.R.B.,* 101 F.3d 111 (D.C. Cir. 1996) (in light of party's "unexcused failure to raise..." issue before the ALJ, the Board should not have considered the issue raised for the first time in a post-hearing brief); *see also Mills v. Apfel,* 244 F3d 1, 8 (1st Cir. 2001) (recognizing "it could cause havoc, severely undermining the administrative process" if issues not raised at the ALJ level are not considered waived).

HN's failure to contest Prong 2 at the ALJ level is especially fatal in light of the regulation governing MAC review, which provides in pertinent part:

> (1) ...the MAC limits its review of the evidence to the evidence contained in the record of the proceedings before the ALJ. However, if the hearing decision decides a new issue that the parties were not afforded an opportunity to address at the ALJ level, the MAC considers any evidence related to that issue that is submitted with the request for review.
> (2) If the MAC determines that additional evidence is needed to resolve the issues in the case and the hearing record indicates that the previous decision-makers have not attempted to obtain the evidence, the MAC may remand the case to an ALJ to obtain the evidence and issue a new decision.

42 C.F.R. § 405.1122(a)(1),(2). HN concedes that "the MAC generally limits its review to

1  'the evidence contained in the record of the proceedings before the ALJ[,]'" but argues that
2  it does not always have to do so.  (Rely, p. 5).  HN also argues that it "was not required to
3  raise every potential *issue* in the ALJ proceedings or else risk waiving those issues before the
4  MAC....Were that the case, MAC briefing would be entirely superfluous, as the parties would
5  be constrained by the assertions made at the ALJ hearings." (*Id.*) (emphasis in original).  At
6  the ALJ level "UPH submitted materials stating that it received federal funds that satisfied
7  Prong 2's requirements" (Response, p. 9) (citing DSOF, ¶29), and HN conceded the point.
8  Given HN's concession at the ALJ level in every case including the cases at issue in the
9  April Briefs that UPH met Prong 2, the ALJ did not decide an issue that the parties had not
10 had an opportunity to address.  HN had every opportunity to challenge Prong 2 before the
11 ALJ, and HN chose not to do so.  Thus, on this record, section 1122(a)(1) is clear that the
12 MAC was limited to reviewing the evidence that was before the ALJ.
13   In its briefs before this Court and at oral argument, HN cites *Ramirez v. Shalala,* 8 F.3d
14 1449, 1452 (9th Cir 1993) and *Brewes v. Commissioner of Social Security Administration,*
15 682 F.3d 1157, 1163 (9th Cir. 2012), holding that in social security disability cases when the
16 Appeals Council considers new evidence in deciding whether to review a decision of the
17 ALJ, that evidence becomes part of the administrative record which the district court must
18 consider when reviewing the Commissioner's final decision for substantial evidence. (Reply,
19 p. 6). According to HN, *Ramirez* and *Brewes* stand for the proposition that new evidence
20 may be introduced on appeal after the ALJ proceeding "and that the courts will consider
21 those new positions so long as the agency had the opportunity to review them." (*Id.*).  HN's
22 reliance on *Ramirez* and *Brewes* is misplaced.  HN overlooks that, unlike 42 C.F.R. § 1122
23 applying to the MAC, the regulation at issue in *Ramirez* and *Brewes* governing Appeals
24 Council review in social security disability cases specifically provides that: "If new and
25 material evidence is submitted, the Appeals Council shall consider the additional evidence
26 only where it relates to the period on or before the date of the administrative law judge
27 hearing decision." 20 C.F.R. §404.970(b).  In contrast, 42 C.F.R. § 1122 contains no such
28 provision. *See supra*.  Further, unlike the Appeals Council in the social security disability

1 cases, the MAC in this case declined to consider HN's new evidence and legal argument and, instead, held that HN failed to satisfy the regulatory requirement for reopening.

HN relies on another regulation, 42 C.F.R. §405.1112(b), to argue that it was not prohibited from raising new argument before the MAC. In pertinent part, section 404.1112(b) provides:

> The request for review must identify the parts of the ALJ action with which the party requesting review disagrees and explain why he or she disagrees with the ALJ's decision, dismissal, or other determination being appealed. *For example, if the party requesting review believes that the ALJ's action is inconsistent with a statute, regulation, CMS Ruling, or other authority, the request for review should explain why the appellant believes the action is inconsistent with that authority*.

42 C.F.R. § 405.1112(b) (emphasis added). HN contends it was permitted "to explain why the application of the statute was erroneous." (Reply, p. 5). However, section 405.1112(b) must be read in the context of the limitations set out in 42 C.F.R. § 405.1122(a)(1) limiting MAC review discussed *supra*. Moreover, HN's conclusory two-sentence statement in its April Brief did not set forth any specific evidentiary or legal basis to challenge the ALJ-level decisions that UPH satisfied Prong 2 in light of statements presented at the ALJ level by both UPH and HN indicating that UPH met Prong 2. (*Compare* AR 469 (HN's April Brief setting forth 2-sentence statement) *with* AR 303-313 (legal analysis set forth in HN's Request to Reopen)). As the Secretary points out, "[t]he result was that the MAC had briefs from Health Net that both explicitly conceded that Prong 2 was satisfied, and that denied the same proposition. Under the circumstances, the MAC was left to decide what Health Net's position actually was on Prong 2." (Response, pp. 10-11). The Secretary argues that in light of the fact that HN did not repudiate its earlier concession, "[e]ven if the MAC [in its Decisions] had noted Health Net's sudden attempted reversal, the existing record and the Department's regulations would have inevitably forced the same result." (*Id*. at p. 11). This Court agrees.

The Supreme "Court has described the doctrine [of exhaustion of administrative remedies] as follows: '[A]s a general rule ... courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at*

- 12 -

*the time appropriate under its practice.*'" *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (emphasis added). Rather, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (footnote omitted). On the instant record, HN failed to properly raise its Prong 2 challenge during the administrative proceeding and, thus, is not entitled to remand in order to do so now. Accordingly, the Magistrate Judge recommends that HN's Motion for Summary Judgment be denied.

**RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, deny Health Net's Motion for Summary Judgment (Doc. 41).

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within **FOURTEEN (14)** days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within **FOURTEEN (14)** days after being served with a copy. Fed.R.Civ.P. 72(b)(2). No replies to objections shall be filed unless leave is granted from the district court to do so. If objections are filed, the parties should use the following case number: **CV 13-1433-TUC-DCB.**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to *de novo* review of the issues. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 11th day of July, 2014.

*/s/ Charles R. Pyle*
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

- 13 -